UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHELLE D'ANTONIO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:11-cv-1295 (AJT/TRJ) |
| | ) |
| JANET NAPOLITANO, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

This employment discrimination case is before the Court on a Motion to Dismiss
or, in the Alternative, for Summary Judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and
56(c), filed on behalf of Defendant Janet Napolitano ("Defendant" or "the Secretary").
Specifically, the Defendant contends that the Complaint should be dismissed for failure
to comply with administrative exhaustion requirements because Plaintiff Michelle
D'Antonio ("Plaintiff" or "D"Antonio") failed to timely seek Equal Employment
Opportunity ("EEO") counseling regarding her non-selection for a Federal Air Marshal
("FAM") position for which she allegedly applied in September 2004. Alternatively, the
Defendant contends that summary judgment should be granted in the Defendant's favor
because the Plaintiff has failed to establish a prima facie case of sex discrimination
because she is unable to demonstrate that she was treated differently than male applicants
for the FAM position to which she allegedly applied. Plaintiff asserts that equitable
tolling should apply and that she timely initiated EEO counseling within 45 days of her
suspecting she had been discriminated against on the basis of sex. Plaintiff also contends

1

that even though she did not establish a prima facie case of sex discrimination, a claimant, such as herself, is not required to do so, as a matter of law, when the claimant "demonstrat[es] that a reasonable person could find that the [d]efendant's proffered reason [for the allegedly discriminatory action] is 'unworthy of credence.'" Pl.'s Opp'n at 13. For the reasons stated below, the Court will GRANT Defendant's motion to dismiss, DENY Defendant's motion for summary judgment as moot, and DISMISS the complaint.

## I.   Background

The following facts, as they appear in the complaint and the record before the Court, are undisputed except where noted:

The federal executive department within which the Federal Air Marshal Service ("FAMS") has been administered has changed several times between September 11, 2001 and June 8, 2007 (the relevant time frame here). *See* Declaration of Christine Greco, attached to Def.'s Mem. From its creation in 1985 until October 1, 2002, FAMS was a component of the Federal Aviation Administration ("FAA"). On October 1, 2002, FAMS was transferred from the FAA to the Transportation Safety Administration ("TSA"), which was then a component of the Department of Transportation ("DOT"). On March 1, 2003, TSA (including FAMS) was transferred to the Department of Homeland Security ("DHS"). From November 2003 to October 2005, FAMS was detailed to the Bureau of Immigration and Customs Enforcement ("ICE"), a component of DHS. On October 1, 2005, FAMS was transferred from ICE, a component of DHS, back to TSA, then also a component of DHS.

On October 26, 2003, Plaintiff was appointed as a Program Specialist, SV030 I-G,

2

for the Federal Air Marshal Service (FAMS). *See* Ex. 1 to Def.'s Mem. On September 1, 2004, the FAMS issued Vacancy Announcement (Vac. Ann.) TSA-04-3315, announcing multiple vacancies nationwide for Federal Air Marshals. *See* Ex. 3 to Def.'s Mem. Vac. Ann. TSA-04-3315 expressly stated that candidates for the advertised FAM position must be under 37 years of age, barring previous experience in a covered Federal law enforcement position.[1] *Id.*[2] At this time, FAMS was part of ICE. Plaintiff alleges that she applied for Vac. Ann. TSA-04-3315 on September 15, 2004.[3] As of September 15,

---

[1] Under applicable laws and regulations, separation from a law enforcement officer position, such as a FAM position, is mandated when the law enforcement officer becomes 57 years old *or* after she completes 20 years of service if then over that age. *See, e.g.,* 5 U.S.C. 8335(b) ("A law enforcement officer, firefighter, nuclear materials courier, or customs and border protection officer who is otherwise eligible for immediate retirement under section 8336(c) shall be separated from the service on the last day of the month in which that officer, firefighter, or courier, as the case may be, becomes 57 years of age or completes 20 years of service if then over that age."). Accordingly, FAMS policy has, at times, set the maximum age entry requirement at age 37. *See* Pl's Ex. 1.

[2] Although Plaintiff does not dispute this fact, she does state, in response to Defendant's list of material facts not in dispute, the following:

> It is true that the announcement states generally that candidates must be under 37, however, age waivers for candidates up to age 40 were in effect in September 2004 pursuant to HRM Letter 300-5, which extended the waiver for all law enforcement applicants. Ex. 1 to Pl.'s Opp'n (HRM Letter 300-5, dated May 31, 2002) ("As the result of TSA's urgent need to hire experienced professionals in law enforcement positions, a decision has been made to temporarily apply the [age] exception to all [FAM] positions within TSA.") (emphasis added). HRM Letter 300-5 was in effect until March 3, 2006. Ex. 2 to Pl.'s Opp'n (TSA Management Directive 1100.88-1) at 344 n. 3 (noting that HRM Letter 300-5 was in effect until March 3, 2006).

Pl.'s Opp'n at 3.

[3] Although Defendant, for the purposes of this pending Motion, does not contest that Plaintiff applied for this vacancy, there is no agency record of Plaintiff's applying for this vacancy. Plaintiff contended during her deposition in the EEO proceedings that she submitted her application via facsimile from her home on September 15, 2004 but did not

2004, Plaintiff was 37 years and 3 months old. *See* Ex. 1 to Def.'s Mem.

Plaintiff was not selected for the FAMS position announced in Vac. Ann. TSA-04-3315. Two FAMS Human Resources representatives told Plaintiff she was ineligible because there were no age waivers at the time. Pl's Ex. 1. Nineteen (19) individuals were selected for the vacancies announced in Vac. Ann. TSA-04-3315, including at least 5 women.[4] *See* Greco Decl. at 6. None of the individuals selected for Vac. Ann. TSA-04-3315 were over the age of 37; two individuals, other than Plaintiff, were deemed not to qualify for selection because they were over the age of 37: one was female (KW) and one was male (CDW).

In October 2004, Plaintiff telephoned a TSA Human Resources (HR) representative to inquire as to the status of her application. *See* Ex. 15 to Def.'s Mem. at 3. According to Plaintiff, the TSA HR representative advised her at that time that she was not selected for the position, and that this decision was based on the maximum entry age requirement. *Id.* According to Plaintiff, HR representatives also informed her that while age waivers were granted as an exception due to immediate hiring needs after September 11, 2001, they were no longer being granted to applicants in 2004. *Id.*

On November 1, 2004, at 2:45 p.m., Plaintiff emailed her supervisor and asked her to "clear up a rumor." *See* Ex. 4 to Def.'s Mem. According to Plaintiff, "[w]ord on

---

retain the transmission sheet that demonstrated that her facsimile was received by the Agency.

[4] Based on the first names of the individuals selected for Vac. Ann. TSA-04-3315, of the 19 individuals selected, 5 appear to the Court to have been women (Lauren, Kerry, Kathryn, Allison, and Heather), 11 appear to the Court to have been men (Scott, Walter, Jon, Kevin, Wayne, Jeffrey, Jeffery, George, Eric, Nathan, and Douglas), and 3 have names for which the Court cannot definitively determine the individual's gender (Terri, Fida, Kirill).

the street is that Pete was accepted in the TNG [training] program after all. Is this true? I am asking this question for my own sake and not to be nosey but I think you realize that but I want to be clear." *Id.* Plaintiff was referring to a FAM named George (Pete) P., who had been selected for one of the FAMS vacancies for which Plaintiff applied. On November 1, 2004, at 2:59 p.m., her supervisor confirmed that George (Pete) P. had left for FAMS training that same day. Ex. 4 to Def.'s Mem. Plaintiff responded to her supervisor, "[v]ery interesting. So it seems that there are waivers."[5] *Id.* According to his Reassignment Standard Form 50, George (Pete) P. was reassigned as a FAM, effective October 31, 2004, when he was 31 years old. *See* Ex. 5 to Def.'s Mem.

On January 12, 2006, the Agency opened Vac. Ann. FAMS-FLD-06-0031 for multiple positions as FAM, SV-1801-G/H/I. Ex. 6 to Def.'s Mem. This announcement also contained a provision regarding maximum entry age requirement, and it stated that "[p]ersons making their first entry into a law enforcement position under these authorities cannot be selected if over age 37." At this time, FAMS was part of TSA. On January 18, 2006, Plaintiff sought clarification from HR regarding the maximum entry age requirement for FAMs. *See* Ex. 10 to Def.'s Mem. at 2.

In August and September 2006, Plaintiff came to believe that three males were hired as FAMs after their 37th birthdays, albeit for vacancies other than those for which Plaintiff had applied. *See* Ex. 10 to Def.'s Mem. at 2.

---

[5] While Plaintiff does not dispute this fact, she states that the reason she inquired about George (Pete) P. was because she had heard rumors that he had credit problems, which she understood should have disqualified him for an appointment. Pl's Ex. 3 at ¶ 10. She was inquiring because she wanted to know if he was given a waiver for his credit issues. *Id.* Plaintiff states that when she learned that George (Pete) P. had been given a waiver, she did not suspect that the maximum age entry requirement was being selectively enforced in favor of men, because she knew that he had not needed an age waiver.

On January 6, 2007, Plaintiff applied for Vacancy Announcement FAMS-FLD-06-0031. *See* Ex. 7 to Def.'s Mem. Avue Direct Services (the online application program used by TSA for Vac. Ann. FAMS-FLD-06-0031) immediately notified Plaintiff that she was ineligible for the advertised FAM position. *Id.*

According to Plaintiff, in June 2007, she discovered the existence of TSA's HRM Letter 300-5, dated May 31, 2002, which provides that "As the result of TSA's urgent need to hire experienced professionals in law enforcement positions, a decision has been made to temporarily apply the [age] exception to all [FAM] positions within TSA." According to TSA Management Directive 1100.88-1, HRM Letter 300-5 was in effect until March 3, 2006.

On June 8, 2007, Plaintiff initiated EEO counseling in conjunction with her non-selection in October 2004 under Vac. Ann. TSA-04-3315. *See* Ex. 8 to Def.'s Mem. Plaintiff at no point sought EEO counseling with regard to her non-selection under Vac. Ann. FAMS-FLD-06-0031, the 2006 announcement. *See id.*

On or about September 26, 2007, Plaintiff filed a formal complaint of discrimination. In November 2007, the Agency accepted the following issue for investigation:

> Whether [Complainant was] discriminated against on the basis of
> sex (female) when, in October 2004, [her] request for a waiver of the
> maximum age requirement of 37 was denied and [she was]
> disqualified for a Federal Air Marshal position. Although [she] was
> told in 2004 that waivers were no longer being granted, on June 8,
> 2007, [Complainant allegedly] learned that the waiver policy was
> still in effect at the time of [her] request.

*See* Ex. 9 to Def.'s Mem. (Corrected Acceptance Letter, dated November 27, 2007).

On May 5, 2009, the EEO Administrative Judge granted summary judgment in

favor of the Agency. Ex. 10 to Def.'s Mem. The AJ determined that Plaintiff was ineligible for selection for Vac. Ann. TSA-04-3315 because she was not under 37 years old when she applied for the position. *Id.* at 4. The AJ also found that Plaintiff failed to offer evidence of pretext sufficient to defeat summary judgment. Plaintiff appealed the grant of summary judgment to the EEOC, Office of Federal Operations, and on August 31, 2011, the EEOC issued a decision affirming the Agency's final order. Ex. 11 to Def.'s Mem.

On November 29, 2011, Plaintiff filed her complaint in this Court, alleging discriminatory non-selection based on sex (female) for a FAMS position, in violation of Title VII. On March 2, 2012, the Defendant moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, on the basis that Plaintiff failed to comply with the administration exhaustion requirements associated with Title VII. Defendant moved, in the alternative, for summary judgment on the ground that, based on the material facts not in dispute (collected through the EEO process and the adjudication of Plaintiff's claims before the AJ), Plaintiff has failed to establish a prima facie case of discrimination. Plaintiff opposed the Defendant's motion on March 20, 2012, and the Defendant filed its reply on March 30, 2012. The Court held a hearing on April 6, 2012, following which it took the matter under advisement.

## II.   Standard of Review

### A.  Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and does not resolve contests surrounding the facts or merits of a claim. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *Republican Party of N.C. v. Martin*, 980

F.2d 943, 952 (4th Cir. 1993). A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*; *see also Bd. of Trustees v. Sullivant Ave. Properties, LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007). In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face"); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

## B. Summary Judgment Under Fed. R. Civ. P. 56(c)

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III.    Analysis

#### A.  Dismissal Under Fed. R. Civ. P. 12(b)(6).

To assert an employment discrimination claim, a plaintiff must initiate EEO counseling within 45 days of the alleged discriminatory event, or the effective date of an alleged discriminatory personnel action. 29 C.F.R. § 1614.105(a)(1). A plaintiff's failure to exhaust her administrative remedies, such as timely initiating EEO counseling, deprives a Court of subject matter jurisdiction to address his or her claim. *See, e.g.,*

*Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim."); *Saunders v. Stone*, 758 F. Supp. 1143, 1145 (E.D. Va. 1991) ("With respect to the initial phase of the Act's remedial scheme, the pertinent EEOC regulations provide that an agency having an equal employment opportunity program may accept a complaint only if the complainant brings the alleged discrimination to the attention of an EEO counselor within [forty-five] days of the alleged discriminatory event."). However, the filing of a timely charge of discrimination with the EEOC, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). As both parties recognize, in this Circuit, "[e]quitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (internal citations omitted) (cited in Def.'s Reply Mem. at 8; Pl.'s Opp'n at 8). Plaintiff suggests that under Title VII, a plaintiff does not have an obligation to show "intentional deception" to benefit from equitable tolling but, instead, that the regulations "require the 45-day period to be extended when the employee 'did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred . . . .'" Pl.'s Opp'n at 8 (quoting 29 C.F.R. § 1614.105(a)(1)). Plaintiff urges the Court to apply this "reasonable suspicion" standard and to find that her initiating EEO counseling in June 2007 with respect to her non-selection in 2004 was timely under such a standard because Plaintiff had no reason to suspect, until June 2007, when she discovered HRM Letter 300-5, that HR representatives were being dishonest with her when they told her

that age waivers were not being granted in 2004.

The Fourth Circuit has rejected the discovery standard plaintiff proposes. In *Hamilton v. 1st Source Bank*, 928 F.2d 86 (4th Cir. 1990), the plaintiff filed with the EEOC a complaint for discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, alleging that he received a lesser salary than younger employees in the same position; the plaintiff did not discover he was paid less until more than a year after he was terminated from the position, during the course of discovery for an action the plaintiff brought alleging discriminatory termination. 928 F.2d at 87-88. A jury found that the employer had discriminated against the plaintiff on the basis of age by paying him a relatively lower salary and a panel of the Fourth Circuit affirmed the jury's verdict, reasoning that his pay discrimination claim was not time-barred under § 626(d), because the 180–day statute of limitations for a pay discrimination charge does not begin to run until an employee "'discovers or by exercise of reasonable diligence could have discovered that she or he was a victim of pay discrimination.'" 928 F.2d at 87. However, the Fourth Circuit, sitting *en banc*, reversed the panel, holding that "under the plain and unequivocal language of the statute, the 180–day period for filing claims begins to run from the time of the alleged discriminatory act, and that Hamilton's claim of pay discrimination is therefore time-barred." *Id.* at 86. As the *en banc* court explained, a "'discovery' rule . . . completely abandons the statute . . . [which] establishes a period of 180 days for plaintiffs to file claims with the EEOC, starting from the time 'the alleged unlawful *practice occurred*', not from the time that the employee discovered its discriminatory nature. The language is clear . . . ." *Id.* at 87 (emphasis in original). "An occurrence is a discrete event, whereas a plaintiff's acquisition of knowledge is a

11

continuing process. One can never be sure exactly when on that continuum of awareness a plaintiff knew or should have known enough that the limitations period should have begun." *Hamilton*, 928 F.2d at 88. In arriving at this rule, the Fourth Circuit looked to Supreme Court cases that applied an "occurrence" rather than a "discovery" standard with respect to the time limits for filing charges with the EEOC under Title VII. *See Hamilton*, 928 F.2d at 88 (citing *Lorance v. AT&T Technologies, Inc.*, 490 U.S. 900, 902 (1989), superseded by statute on other grounds, and *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)). In an unpublished opinion, the Fourth Circuit extended the rule it announced in the ADEA context in *Hamilton* to the precise Title VII time limit at issue in this case, holding that a claim for race and sex discrimination against the Commissioner of the Social Security Administration was barred for failure to initiate EEO counseling within 45 days of the allegedly discriminatory personnel action. *See Young v. Barnhart*, 52 Fed. App'x 191, 193 n.4 (2002) (referring to the court's ruling in *Hamilton v. 1st Source Bank*, 928 F.2d 86 (4th Cir. 1990)).

Here, Plaintiff knew that she had not been selected as early as October 2004, and under the holding and reasoning in *Hamilton* she had 45 days from her allegedly discriminatory non-selection to initiate counseling, absent equitable tolling or waiver. There is no contention that the Defendant waived the time limit to initiate EEO counseling and so the only remaining issue is whether Plaintiff has sufficiently demonstrated that the 45 day period to initiate EEO counseling was equitably tolled.[6]

---

[6] Plaintiff's communications with agency personnel in October 2004 and again in October or November 2006 strongly suggest that Plaintiff had suspicions as of those dates of the alleged discrimination in application of the age waivers. *See* Ex. 4 to Def.'s Mem., at 180; Ex. 18 to Def.'s Reply Mem., at 190 (also referencing that, as a result of the 2006 communications, Francis Comito, FAMS HR Employee Relations Specialist understood

It is unclear whether Plaintiff actually contends that she has demonstrated equitable tolling, separate and apart from her contention that a discovery standard should apply to when the 45 day period began to run. *See* Pl.'s Opp'n at 8-12. Nevertheless, to the extent she relies upon equitable tolling, she has failed to raise a triable issue under that doctrine. "Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *English*, 828 F.2d at 1049. To invoke equitable tolling under Title VII, a plaintiff must establish two facts: (1) that the defendant attempted to mislead her; and (2) that the plaintiff reasonably relied on the misrepresentation by neglecting to timely initiate her claim. *Id.* Plaintiff has failed to present evidence in support of the first required factual showing, as she has provided no evidence that the HR officials from whom she sought information about the age waiver policy between 2004 and 2007 intentionally misrepresented the policy. In fact, Plaintiff has presented no evidence definitively showing that a policy permitting the application of age waivers was actually applied to Vac. Ann. TSA-04-3315. Additionally, there is no evidence that Agency officials were providing incorrect information to Plaintiff for the purpose of delaying Plaintiff's initiation of EEO counseling. As Plaintiff has not shown that Defendant attempted to mislead her, her claim for the applicability of equitable tolling must fail.

For these reasons, the Court finds that Plaintiff did not timely initiate EEO counseling and, as such, did not satisfy the administrative exhaustion requirements of

---

Plaintiff to be "alleging that FAMS is hiring people who exceed age 37"). Also, at least as early as November 2006, Plaintiff had retained an attorney, suggesting that by that date she had a reasonable suspicion of the alleged discriminatory action. *See id.* at 192. *See* Ex. 4 to Def.'s Mem., at 180.

Title VII; accordingly, Plaintiff had failed to state a claim and her complaint will be dismissed under Fed. R. Civ. P. 12(b)(6).

### B. The Defendant is Entitled to Summary Judgment on Plaintiff's Claim.

The Court also concludes and finds, independent of whether Plaintiff timely exhausted her administrative remedies, that, as a matter of law, she failed to come forward with facts, which when accepted as true, establish a prima facie case of sex discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (holding that under Title VII, plaintiff bears burden of establishing a prima facie case of discrimination). To make a prima facie case of sex discrimination in a non-selection case such as this one, a plaintiff must show: "1) he is a member of a protected group; 2) he applied for the position in question; 3) he was qualified for the position; and 4) he was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination." *Ransom v. Danzig*, 69 F. Supp. 2d 779, 785 (E.D. Va. 1999) (citing *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994) (stating plaintiff makes a prima facie by showing, *inter alia*, "plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination."). *See also Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999).

It is undisputed that both men and women were selected for the positions announced in Vac. Ann. TSA-04-3315, and that both a man and a woman other than Plaintiff were deemed ineligible on the basis that they were older than 37. *See* Greco Decl. at 6. It is also undisputed that no age waivers were granted to anyone, regardless of sex, for Vac. Ann. TSA-04-3315. *Id.*

14

In order to establish a prima facie case, it is not always necessary for a plaintiff to demonstrate that she was "rejected for the position in favor of someone not a member of the protected group." *Ransom*, 69 F. Supp. 2d at 785. *See also Bryant v. Aiken Regional Medical Centers Inc.*, 333 F.3d 536, 545 (4th Cir. 2003) ("Bryant is not required as a matter of law to point to a similarly situated white comparator in order to succeed on a race discrimination claim."). Nevertheless, a plaintiff can never escape the obligation to show she was rejected under "circumstances giving rise to an inference of unlawful discrimination." *Carter*, 33 F.3d at 458. Such circumstances are not present here, as a matter of law.

In order to establish "circumstances giving rise to an inference of unlawful discrimination," Plaintiff presents various arguments in an attempt to neutralize otherwise dispositive facts. For example, she argues with respect to CDW, a male over age 37 who also was not selected for Vac. Ann. TSA-04-3315, that although CDW was ineligible because of his age, "agency documents demonstrate that he was ineligible because he missed the application deadline," and this "cover-up" gives rise to an inference of discrimination. Pl.'s Opp'n at 15-16. Even were it true that CDW missed a filing deadline, one could not reasonably infer that he would have been granted an age waiver had he not missed the deadline.

Plaintiff also relies heavily on her contention that for the 2006 vacancy announcement, several men, but no women, were granted age waivers. *See* Pl.'s Opp'n at 15. There is no indication in the record whether any women applied for waivers, but more basic is a lack of any foundation for the argument that comparators can properly be taken from this 2006 applicant pool, which applied to a FAM vacancy that was not only

remote in time and different than the vacancy that forms the basis of Plaintiff's claim, but occurred within a different agency. In this regard, at the time of Plaintiff's non-selection in 2004, FAM was a part of ICE, whereas the 2006 FAM vacancy, whose applicant pool Plaintiff invokes as comparators, was filled while FAM was part of TSA. This disparity is particularly significant since the policy at the heart of Plaintiff's claim, as set forth in HRM Letter 300-5, was a TSA policy, not an ICE policy, "to temporarily apply the exception to all [law enforcement] positions in TSA." Accordingly, TSA's treatment of an applicant for a FAM vacancy in 2006 cannot be an appropriate comparator for the purposes of evaluating ICE's treatment of an applicant for a FAM vacancy in 2004.

Finally, Plaintiff basically concedes that she has not made a prima facie case, but argues that whether she has done so or not "is no longer relevant" as Defendant has already proffered a non-discriminatory reason for its action. Pl.'s Opp'n at 13. In support of this position, Plaintiff cites to *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983). In *Aikens*, the defendant had already tried and failed to persuade the district court to dismiss the action for lack of a prima facie case, and, having failed to do so, offered evidence of the reason for the allegedly adverse action. Reviewing the case in that procedural posture, the Court found that "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *Aikens*, 460 U.S. at 715. Here, unlike in *Aikens*, Defendant seeks summary judgment precisely on the grounds that Plaintiff has failed to establish a prima facie case, and the Court must therefore consider whether or not that prima facie case has been made. In this regard, at the summary judgment stage, a Title VII plaintiff who cannot present direct

evidence of discrimination "[i]s obliged to proceed under the *McDonnell Douglas* proof scheme, under which [the plaintiff] carrie[s] the initial burden of establishing a prima facie case of discrimination." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). *See also, e.g., Samuel v. Williamsburg-James City County Sch, Bd.*, 540 F. Supp. 2d 667, 671 n.9 (E.D. Va. 2008) (at summary judgment stage, plaintiff asserting claim under Title VII has "initial burden to prove a prima facie case" and only "[o]nce the plaintiff establishes a prima facie case," does case proceed to next steps of *McDonnell Douglas* burden shifting); *Jackson v. Winter*, 497 F. Supp. 2d 759, 767 (E.D. Va. 2007) (explaining order of proof for summary judgment: "[i]f [plaintiff] establishes a *prima facie* case, the burden *then* shifts to the [employer] to articulate a legitimate, nondiscriminatory reasons . . . [and o]nce the [employer] articulates such a reason, the burden *then* shifts back to [the plaintiff] to prove that the articulated reason is a mere pretext for discrimination") (emphasis added). Because Plaintiff has not made a prima facie case, her claim cannot survive the Defendant's summary judgment motion.

## IV.    Conclusion

For the above reasons, the Court concludes that Plaintiff failed to timely file her complaint and her delay is not subject to equitable tolling. The Court therefore will GRANT Defendant's Motion to Dismiss. In the alternative, the Court concludes as a matter of law, that Plaintiff has failed to come forward with facts, which, when taken as true, establish a prima facie case of sex discrimination, and therefore, in the alternative, GRANTS Defendant's Motion for Summary Judgment.

An appropriate order will issue.

_____
/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
May 4, 2012

18